FILED

JAN 17 2025

UNITED STATES DISTRICT JUDGE
STEVEN C. SEEGER

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA

v.

THOMAS PAVEY

No. 22-CR-323

Judge Steven C. Seeger

## PLEA AGREEMENT

1.      This Plea Agreement between the Acting United States Attorney for the Northern District of Illinois, MORRIS PASQUAL, and defendant THOMAS PAVEY, and his attorney, DANIEL W. ECKHART, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure and is governed in part by Rule 11(c)(1)(A), as more fully set forth below. The parties to this Agreement have agreed upon the following:

## Charges in This Case

2.      The superseding indictment in this case charges defendant with conspiracy to distribute counterfeit currency, in violation of Title 18, United States Code, Section 371 (Count One); conspiracy to distribute a controlled substance, in violation of Title 21, United States Code, Section 846 (Count Two); conspiracy to possess fifteen or more unauthorized access devices, in violation of 18 U.S.C. § 1029(a)(3) (Count Three); conspiracy to distribute counterfeit currency, in violation of Title 18, United States Code, Section 371 (Count Four); and money laundering conspiracy; in violation of Title 18, United States Code, Section 1956(h) (Count Five).

3.     Defendant has read the charges against him contained in the superseding indictment, and those charges have been fully explained to him by his attorney.

4.     Defendant fully understands the nature and elements of the crimes with which he has been charged.

### Charge to Which Defendant Is Pleading Guilty

5.     By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to the following count of the superseding indictment: Count Two, which charges defendant with conspiracy to distribute a controlled substance, in violation of Title 21, United States Code, Section 846.   In addition, as further provided below, defendant agrees to the entry of a forfeiture judgment.

### Factual Basis

6.     Defendant will plead guilty because he is in fact guilty of the charge contained in Count Two of the superseding indictment. In pleading guilty, defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt and constitute relevant conduct pursuant to Guideline § 1B1.3, and establish a basis for forfeiture of the property described elsewhere in this Plea Agreement:

Beginning no later than in or about August 2017 and continuing until on or about August 22, 2020, in the Northern District of Illinois, Eastern Division, and elsewhere, THOMAS PAVEY, also known as "Dopenugget," conspired with each other and with others known and unknown to the Grand Jury, to knowingly and intentionally

2

possess with the intent to distribute and distribute a controlled substance, namely, one kilogram or more of a mixture and substance containing a detectable amount of heroin, a Schedule I Controlled Substance, five kilograms or more of a mixture and substance containing a detectable amount of cocaine, a Schedule II Controlled Substance, and 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine, a Schedule II Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1); in violation of Title 21, United States Code, Section 846.

### Defendant Was the Co-Creator and Co-Administrator of Empire Market

Beginning in approximately August 2017, defendant and Hamilton, who defendant knew as "Crimson," "Sydney," and "ZeroAngel," agreed to create and operate Empire Market, a dark web marketplace for illegal goods and services that operated from approximately February 1, 2018 through August 22, 2020. Defendant, along with Hamilton, owned, operated, and oversaw all aspects of Empire Market. Defendant and Hamilton profited from their operation of Empire Market. Defendant and Hamilton designed Empire Market as a marketplace for vendors and buyers to buy and sell illegal products and services anonymously. The illegal products and services included controlled substances, compromised or stolen account credentials, stolen personally identifying information, and counterfeit currency, and computer hacking tools, among other items.

3

While in operation, Empire Market was one of the largest dark web marketplaces of its kind. By approximately August 2020, Empire Market had approximately 1,681,429 unique registered users, including approximately 359,763 buyers and approximately 5,002 vendors. During the life of the marketplace, vendors and buyers conducted approximately 4,003,803 separate transactions. Net sales, including shipping charges, totaled approximately $432,951,570.47. Defendant profited from these sales by retaining portions of cryptocurrency transacted on Empire Market.

Defendant and Hamilton were responsible for the design and structure of Empire Market. Defendant was responsible for the technical operation and maintenance of the site, including maintaining server infrastructure and adding new features to the user interface.

### Goods and Services Available on Empire Market

Defendant and Hamilton agreed to and did design Empire Market to list the specific illegal goods and services offered for sale on the site. The top-level categories of items for sale included, "Fraud," "Drugs & Chemicals," "Guides & Tutorials," "Counterfeit Items," "Carded Items," and "Software & Malware," among others. Defendant knew that Empire Market vendors sold the illegal goods and services listed on the site, including controlled substances, stolen personally identifying information, stolen credit card information, counterfeit goods and currency, among other illegal items. In addition to illegal goods and services, Defendant knew that

4

vendors on Empire Market also sold guides and information related to fraud, how to use stolen personally identifying information, and other items that facilitated criminal conduct. Empire Market was designed to support these sales.

Sales of controlled substances were the most prevalent activity on Empire Market. Defendant acknowledges that as of approximately August 20, 2020, Empire Market had approximately 166,029 vendor listings for controlled substances. Over the life of the site, there were approximately 2,750,712 controlled substance transactions. Net sales of controlled substances on Empire Market totaled approximately $374,069,309.81.

When a buyer purchased controlled substances, the vendor would ship the item purchased to an address provided by the buyer. In some instances, the vendor was located outside of the United States and shipped to customers in the United States. This included shipments of methamphetamine from outside the United States to customers in the United States.

Defendant acknowledges that, between April 16, 2019 and May 1, 2020, U.S. law enforcement officials made undercover purchases from Empire Market vendors. These purchases included at least 143.5 grams of methamphetamine and 105.4 grams of heroin.

Defendant further acknowledges that on August 10, 2020, Individual A ordered one pound of methamphetamine from Vendor J on Empire Market and had it shipped

to his home in Chicago. The package was intercepted by law enforcement and contained approximately 443.5 grams of methamphetamine.

The defendant acknowledges that the total amount of controlled substances distributed as part of the offense and relevant conduct included at least: 21,177.23 ounces of marijuana, 446,683.15 grams of cocaine, 71,992.33 grams of methamphetamine, 103,396.21 grams of heroin, 13,314.23 grams of fentanyl, and 7,694.63 grams of cocaine base.

Defendant knew that in addition to controlled substances, Empire Market vendors sold a variety of stolen account login credentials and other tools and methods for gaining unauthorized access to computers. These included account and password combinations for a variety of services. For example, on approximately August 20, 2020, Empire Market had approximately 63,224 listings containing account and password combinations for sale. Vendors and buyers conducted approximately 50,850 transactions of compromised account information. In August 2020, Empire Market had approximately 1,533,386 listings for stolen or compromised credit card information. Vendors and buyers conducted approximately 200,096 transactions involving stolen or compromised credit card numbers on the site. In addition, Empire Market featured a category titled "software and malware" and offered items for sale under subcategories like "botnets and malware," "exploits," and "exploit kits". These included zero-day exploits, ransomware, "hacking tutorials" and "crypters," a type of software that encrypts malware to make it harder to detect by security programs.

6

### *Empire Market Was Designed to Hide its Creators and Users from Law Enforcement*

Defendant and Hamilton designed and maintained Empire Market to anonymize its users, make its users untraceable by law enforcement, and to assist themselves and Empire Market users in laundering money used in Empire Market transactions.

For example, defendant and Hamilton designed Empire Market to be accessible only by using a TOR (The Onion Router) browser, which is designed to facilitate anonymous communication over the internet. Further, Empire Market was a "hidden services" website. That is, it was only accessible through the Tor network.

To further anonymize users, Defendant and Hamilton set up Empire Market so that all transactions were conducted using cryptocurrency – users could not use other means, such as a credit card or debit card, to pay for purchases.

Defendant and Hamilton designed Empire Market to emphasize "stealth," which referred to how well a vendor packaged their products to avoid detection. For example, customers could provide feedback to vendors based on this feature.

Defendant and Hamilton designed Empire Market to encourage the use of encrypted messaging on its platforms. Similarly, Empire Market featured tips and recommendations on how to launder proceeds and conceal cryptocurrency used in purchases.

Defendant and Hamilton discussed methods of laundering their own earnings from Empire Market. Defendant took steps to conceal the nature and source of his

7

earnings, including by using mixers and tumblers to obscure the source of his earnings. In addition, defendant used other laundering techniques, including the purchase of precious metals and similar items.

### *Defendant's Conspiracy to Sell Counterfeit Currency on AlphaBay*

Defendant also acknowledges that, between on or about June 15, 2016 to on or about July 5, 2017, defendant conspired to sell, and did sell, counterfeit U.S. currency on AlphaBay. AlphaBay was a dark web marketplace that preceded the existence of Empire Market and operated similarly. Defendant used the name "Dopenugget" on AlphaBay and maintained a vendor page offering counterfeit currency for sale. When customers ordered counterfeit currency, defendant shipped counterfeit bills in exchange for payment in cryptocurrency. Defendant and Hamilton used AlphaBay as a model for how Empire Market looked and operated, and Empire Market was advertised, at defendant's direction, as an AlphaBay "clone."

7. The foregoing facts are set forth solely to assist the Court in determining whether a factual basis exists for defendant's plea of guilty and criminal forfeiture, and are not intended to be a complete or comprehensive statement of all the facts within defendant's personal knowledge regarding the charged crimes and related conduct.

### Maximum Statutory Penalties

8. Defendant understands that the charge to which he is pleading guilty carries the following statutory penalties:

8

a. A maximum sentence of life imprisonment, and a statutory mandatory minimum sentence of 10 years. Pursuant to Title 18, United States Code, Section 3561, defendant may not be sentenced to a term of probation for this offense. This offense also carries a maximum fine of $10,000,000. Defendant further understands that the judge also must impose a term of supervised release of not less than five years, and up to any number of years, including life.

b. Defendant further understands that the Court must order restitution to the victims of the offense in an amount determined by the Court unless it determines that restitution is not applicable because the number of identifiable victims is so large as to make restitution impracticable or determining complex issues of fact related to the cause or amount of the victim losses would complicate or prolong the sentencing process to a degree that the need to provide restitution to any victim is outweighed by the burden on the sentencing process.

c. Pursuant to Title 18, United States Code, Section 3013, defendant will be assessed $100 on the charge to which he has pled guilty, in addition to any other penalty or restitution imposed.

## Sentencing Guidelines Calculations

9. Defendant understands that, in determining a sentence, the Court is obligated to calculate the applicable Sentencing Guidelines range, and to consider that range, possible departures under the Sentencing Guidelines, and other sentencing factors under 18 U.S.C. § 3553(a), which include: (i) the nature and

circumstances of the offense and the history and characteristics of the defendant; (ii) the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (iii) the kinds of sentences available; (iv) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (v) the need to provide restitution to any victim of the offense.

10.     For purposes of calculating the Sentencing Guidelines, the parties agree on the following points:

a.      **Applicable Guidelines**. The Sentencing Guidelines to be considered in this case are those in effect at the time of sentencing. The following statements regarding the calculation of the Sentencing Guidelines are based on the Guidelines Manual currently in effect, namely the 2023 Guidelines Manual.

b.      **Offense Level Calculations**.

a.      The base offense level pursuant to Guideline §§ 2D1.1(a)(5) and (c)(1) is 38 because 397,542.32 kilograms of total converted drug weight is greater than 90,000 kilograms of converted drug weight.

10

        b.     Pursuant to Guideline § 2D1.1(b)(5), defendant receives a two-level increase because the offense involved the importation of methamphetamine.

        c.     Pursuant to Guideline § 2D1.1(b)(7), defendant receives a two-level increase because the defendant, or a person for whose conduct the defendant is accountable under §1B1.3 (Relevant Conduct), distributed a controlled substance through mass-marketing by means of an interactive computer service, namely, Empire Market.

        d.     Pursuant to Guideline § 2D1.1(b)(16)(E), defendant receives a two-level increase because the defendant receives an adjustment under § 3B1.1 (Aggravating Role) and the defendant committed the offense as part of a pattern of criminal conduct engaged in as a livelihood.

        e.     Pursuant to Guideline § 3B1.1, defendant receives a four-level increase because defendant was an organizer and leader of criminal activity involving five or more participants and was otherwise extensive.

        f.     Defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for his criminal conduct. If the government does not receive additional evidence in conflict with this provision, and if defendant continues to accept responsibility for his actions within the meaning of Guideline § 3E1.1(a), including by furnishing the United States Attorney's Office and the Probation Office with all requested financial information relevant to his ability to

satisfy any fine that may be imposed in this case, a two-level reduction in the offense level is appropriate.

g. In accord with Guideline § 3E1.1(b), defendant has timely notified the government of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the Court to allocate its resources efficiently. Therefore, as provided by Guideline § 3E1.1(b), if the Court determines the offense level to be 16 or greater prior to determining that defendant is entitled to a two-level reduction for acceptance of responsibility, the government will move for an additional one-level reduction in the offense level.

c. **Criminal History Category**. With regard to determining defendant's criminal history points and criminal history category, based on the facts now known to the government, defendant's criminal history points equal zero and defendant's criminal history category is I.

d. **Anticipated Advisory Sentencing Guidelines Range**. Therefore, based on the facts now known to the government, the anticipated offense level is 45, with an effective offense level of 43, which, when combined with the anticipated criminal history category of I, results in an anticipated advisory sentencing guidelines range of life imprisonment, in addition to any supervised release, fine, and restitution the Court may impose. Defendant also acknowledges that he is subject to a statutory minimum sentence of 10 years' imprisonment.

e.      Defendant and his attorney and the government acknowledge that the above guidelines calculations are preliminary in nature, and are non-binding predictions upon which neither party is entitled to rely. Defendant understands that further review of the facts or applicable legal principles may lead the government to conclude that different or additional guidelines provisions apply in this case. Defendant understands that the Probation Office will conduct its own investigation and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final guideline calculation. Accordingly, the validity of this Agreement is not contingent upon the probation officer's or the Court's concurrence with the above calculations, and defendant shall not have a right to withdraw his plea on the basis of the Court's rejection of these calculations.

f.      Both parties expressly acknowledge that this Agreement is not governed by Fed. R. Crim. P. 11(c)(1)(B), and that errors in applying or interpreting any of the sentencing guidelines may be corrected by either party prior to sentencing. The parties may correct these errors either by stipulation or by a statement to the Probation Office or the Court, setting forth the disagreement regarding the applicable provisions of the guidelines. The validity of this Agreement will not be affected by such corrections, and defendant shall not have a right to withdraw his plea, nor the government the right to vacate this Agreement, on the basis of such corrections.

**Agreements Relating to Sentencing**

13

11.    It is understood by the parties that the sentencing judge is neither a party to nor bound by this Agreement and may impose a sentence up to the maximum penalties as set forth above. Defendant further acknowledges that if the Court does not accept the sentencing recommendation of the parties, defendant will have no right to withdraw his guilty plea.

12.    Regarding restitution, the parties agree that restitution is not applicable because the number of identifiable victims is so large as to make restitution impracticable and determining complex issues of fact related to the cause or amount of the victim losses would complicate or prolong the sentencing process to a degree that the need to provide restitution to any victim is outweighed by the burden on the sentencing process.

13.    Defendant agrees to pay the special assessment of $100 at the time of sentencing with a cashier's check or money order payable to the Clerk of the U.S. District Court.

14.    Defendant agrees that the United States may enforce collection of any fine or restitution imposed in this case pursuant to Title 18, United States Code, Sections 3572, 3613, and 3664(m), and Title 31, United States Code, Sections 3711, 3716, and 3728, notwithstanding any payment schedule set by the Court. In the event of the death or dissolution of, or the government's inability to locate the named recipient(s) of restitution in the Judgment and Commitment Order, the defendant agrees to not oppose efforts by the government to obtain an order substituting as

14

payee a representative of the victim's estate, another family member, or any other person or successor entity appointed as suitable by the court, or the Crime Victims Fund.

15.    After sentence has been imposed on the count to which defendant pleads guilty as agreed herein, the government will move to dismiss the remaining counts of the superseding indictment, as well as the indictment as to defendant.

### Forfeiture

16.    Defendant understands that, by pleading guilty, he will subject to forfeiture to the United States all right, title, and interest that he has in any property constituting or derived from proceeds obtained, directly or indirectly, as a result of the offense; any property used or intended to be used, in any manner or part, to commit or facilitate commission of the offense and any property involved in the offense, including the items listed below.

17.    Defendant agrees to forfeiture of the following specific property to the United States:

      a.        30 Broadriver Road, Ormond Beach, Florida, 32174;

      b.        3930 S. Nova Road, Port Orange, Florida, 32127;

      c.        1584.899382888 BTC (bitcoin);

      d.        61690.760485988816 XMR (monero);

      e.        372.83546703 LTC (litecoin);

      f.        $22,307 in U.S. currency;

g.      Two boxes containing 25 oz gold bars;

h.      Assorted jewelry;

i.      $133,149.53 cashier's check;

j.      2022 Mercedes Benz G63 AMG;

k.      2016 Dodge Challenger Asset ID;

l.      2019 Chevrolet Silverado Asset ID;

m.      1 Black Samsung Galaxy S9 bearing IMEI -number 35241009302061;

n.      1 SanDisk Ultra SSD 1 TB bearing serial number MQ02ABD100H;

o.      1 Cellphone bearing serial number R5CN8187QCT;

p.      1 Samsung Tablet 32GB bearing serial number 12521491PY8W;

q.      2 Sam Data USB drives 32 GB;

r.      1 red unmarked USB drive;

s.      2 Black unmarked USB drive;

t.      1 Grey unmarked Scandisk USB Drive;

u.      1 Lenovo Ideapad model 81HS bearing serial number MP1HPAVS;

v.      1 Dell laptop model P65F bearing serial number 2Z40X32 and associated power cord;

16

  w.  1 Unmarked silver USB drive;

  x.  1 Blue unmarked USB drive and orange canister;

  y.  1 Cruzer Glide 16 GB bearing serial number SDC260-016G;

  z.  1 Sandisk Cruzer 32 bearing serial number GB SDCZ36-032G;

  aa.  1 Sandisk black USB drive with grey mark obfuscating device information;

  bb.  1 Sandisk Ultra USB 3.0 64 GB black;

  cc.  1 Blue unmarked USB drive;

  dd.  1 Sandisk mobile mate bearing serial number 5DDR-B531;

  ee.  1 USB drive pink unmarked;

  ff.  1 Silver USB drive bearing brand Polono;

  gg.  1 Black computer bearing serial number 01193699410623; and

  hh.  1 micro SD card.

In doing so, defendant admits that the property described above represents proceeds defendant obtained as a result of the offense, property which facilitated the offense, or property involved in the offense, as alleged in the superseding indictment. Defendant consents to the immediate entry of a preliminary order of forfeiture as to this specific property, thereby extinguishing any right, title, or interest defendant has

17

in it. If any of the specific property is not yet in the custody of the United States, defendant agrees to seizure of that property so that it may be disposed of according to law.

18.     Defendant acknowledges that on or about December 21, 2022, administrative forfeiture proceedings were commenced against certain property, including items (g) through (j) in the preceding paragraph. Defendant further acknowledges that on or about May 21, 2024, administrative forfeiture proceeds were commences against items (k), (l), and (m), in the preceding paragraph. By signing this plea agreement, defendant acknowledges that he had notice of the administrative forfeiture proceeding, relinquishes any right, title, and interest he may have had in this property, withdraws any previously filed claims, and understands that an administrative decree of forfeiture has been entered, or will be entered, thereby extinguishing any claim he may have had in the seized property.

19.     Defendant understands that forfeiture shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon defendant in addition to the forfeiture judgment.

20.     Defendant agrees to waive all constitutional, statutory, and equitable challenges in any manner, including but not limited to direct appeal or a motion brought under Title 28, United States Code, Section 2255, to any forfeiture and/or abandonment carried out in accordance with this agreement on any grounds, including that the forfeiture constitutes an excessive fine or punishment. The waiver

18

in this paragraph does not apply to a claim of involuntariness or ineffective assistance of counsel. Defendant further agrees not to challenge or seek review of the civil or administrative forfeiture of any property identified in this agreement subject to forfeiture or abandonment, and will not assist any third party with regard to such challenge or review.

## Acknowledgments and Waivers Regarding Plea of Guilty

### Nature of Agreement

21.     This Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case 22 CR 323.

22.     This Agreement concerns criminal liability only. Except as expressly set forth in this Agreement, nothing herein shall constitute a limitation, waiver, or release by the United States or any of its agencies of any administrative or judicial civil claim, demand, or cause of action it may have against defendant or any other person or entity. The obligations of this Agreement are limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities, except as expressly set forth in this Agreement.

### Waiver of Rights

23.     Defendant understands that, by pleading guilty, he surrenders certain rights, including the following:

19

     a.    **Trial rights**. Defendant has the right to persist in a plea of not guilty to the charges against him, and if he does, he would have the right to a public and speedy trial.

     a.    The trial could be either a jury trial or a trial by the judge sitting without a jury. However, in order that the trial be conducted by the judge sitting without a jury, defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

     b.    If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random. Defendant and his attorney would participate in choosing the jury by requesting that the Court remove prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

     c.    If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving defendant guilty beyond a reasonable doubt, and that the jury could not convict him unless, after hearing all the evidence, it was persuaded of his guilt beyond a reasonable doubt and that it was to consider each count of the superseding indictment separately. The jury would have to agree unanimously as to each count before it could return a verdict of guilty or not guilty as to that count.

     d.    If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, and considering

20

each count separately, whether or not the judge was persuaded that the government had established defendant's guilt beyond a reasonable doubt.

e.     At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and his attorney would be able to cross-examine them.

f.     At a trial, defendant could present witnesses and other evidence in his own behalf. If the witnesses for defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court. A defendant is not required to present any evidence.

g.     At a trial, defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify in his own behalf.

h.     With respect to forfeiture, defendant understands that if the case were tried before a jury, he would have a right to retain the jury to determine whether the government had established the requisite nexus between defendant's offense and any specific property alleged to be subject to forfeiture.

b.     **Waiver of appellate and collateral rights**. Defendant further understands he is waiving all appellate issues that might have been available if he had exercised his right to trial. The waiver in this paragraph does not apply to a claim

21

of involuntariness or ineffective assistance of counsel, nor does it prohibit defendant from seeking a reduction of sentence based directly on a change in the law that is applicable to defendant and that, prior to the filing of defendant's request for relief, has been expressly made retroactive by an Act of Congress, the Supreme Court, or the United States Sentencing Commission.

24. Defendant understands that, by pleading guilty, he is waiving all the rights set forth in the prior paragraphs. Defendant's attorney has explained those rights to him, and the consequences of his waiver of those rights.

**Presentence Investigation Report/Post-Sentence Supervision**

25. Defendant understands that the United States Attorney's Office in its submission to the Probation Office as part of the Pre-Sentence Report and at sentencing shall fully apprise the District Court and the Probation Office of the nature, scope, and extent of defendant's conduct regarding the charges against him, and related matters.

26. Defendant agrees to truthfully and completely execute a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the Probation Office, and the United States Attorney's Office regarding all details of his financial circumstances, including his recent income tax returns as specified by the probation officer. Defendant understands that providing false or incomplete information, or refusing to provide this information, may be used as a basis for denial of a reduction for acceptance of responsibility

22

pursuant to Guideline § 3E1.1 and enhancement of his sentence for obstruction of justice under Guideline § 3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001 or as a contempt of the Court.

27.    For the purpose of monitoring defendant's compliance with his obligations to pay a fine and restitution during any term of supervised release to which defendant is sentenced, defendant further consents to the disclosure by the IRS to the Probation Office and the United States Attorney's Office of defendant's individual income tax returns (together with extensions, correspondence, and other tax information) filed subsequent to defendant's sentencing, to and including the final year of any period of supervised release to which defendant is sentenced. Defendant also agrees that a certified copy of this Agreement shall be sufficient evidence of defendant's request to the IRS to disclose the returns and return information, as provided for in Title 26, United States Code, Section 6103(b).

### Other Terms

28.    Defendant agrees to cooperate with the United States Attorney's Office in collecting any ordered fine and restitution for which defendant is liable, including providing financial statements and supporting records as requested by the United States Attorney's Office.

29.    Defendant understands that, if convicted, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

## Conclusion

30.    Defendant understands that this Agreement will be filed with the Court, will become a matter of public record, and may be disclosed to any person.

31.    Defendant understands that his compliance with each part of this Agreement extends throughout the period of his sentence, and failure to abide by any term of the Agreement is a violation of the Agreement. Defendant further understands that in the event he violates this Agreement, the government, at its option, may move to vacate the Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Agreement, or may move to resentence defendant or require defendant's specific performance of this Agreement. Defendant understands and agrees that in the event that the Court permits defendant to withdraw from this Agreement, or defendant breaches any of its terms and the government elects to void the Agreement and prosecute defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

32.    Should the judge refuse to accept defendant's plea of guilty, this Agreement shall become null and void and neither party will be bound to it.

33.    Defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Agreement, to cause defendant to plead guilty.

34.    Defendant acknowledges that he has read this Agreement and carefully reviewed each provision with his attorney. Defendant further acknowledges that he understands and voluntarily accepts each and every term and condition of this Agreement.

AGREED THIS DATE: ___1/17/25___

_____
MORRIS PASQUAL
Acting United States Attorney

_____
MELODY WELLS
Assistant U.S. Attorney

_____
THOMAS PAVEY
Defendant

_____
DANIEL W. ECKHART
Attorney for Defendant